Nott, J.,
delivered the opinion of the court:
This is an action brought to recover #176,576 37 for services in carrying the United States mails in California and Utah during the years 1S52 and 1853. The facts, so far as it is necessary to consider them, are these:
Between the years 1851 and 1854 the claimant, or the firm of which he is the surviving partner, were engaged in certain mail services which involved them, it is alleged, in great loss, injustice, and personal *144 danger. Of the truth of these allegations he seems to have convinced . Congress, for in 1857 a private act was passed for his relief, which is the basis of this action. The statute is so peculiar that it is necessary to quote it in full:
“ Chapter CLXXVI. An act for tire relief of George Chorpenning, jr.
“Be it enacted, by the Senate and House of Representatives of the United States of America in Congress assembled, That the Postmaster General be, and he is hereby, required to adjust and settle the claim of said Chorpenning, as surviving partner of Woodward & Chorpenning-, in his own right for carrying the mails by San Pedro, and for supplying the post office in Carson’s "Valley, and also for carrying part of the Independence mail by California, allowing a pro rata increase of compensation for the distance by San Pedro, for the service to Carson’s Valley, and for such part of the eastern mail as was carried by California during all the time when said services were performed, as shown by the affidavits and proofs on file in the House of Representatives.
“ Sec. 2. And be it further enacted, That the Postmaster General he, and he is hereby, required to adjust and settle the claim of said Chorpenning, as surviving partner of Woodward & Chorpenning, for damages on account of the annulment or suspension of Woodward & Chorpenning’s contract for carrying the United States mail from Sacramento, in California, to Salt Lake, in Utah Territory, as shown in the affidavits and proofs on file in the House of Representatives.
“ Sec. (3) 4. And be it further enacted, That the Postmaster General be required to allow and pay to said Chorpenning his full contract pay during the suspension of Woodward & Ohorpen'ning’s contract, from the 15th day of March, 1853, to the 1st of July of the same year; and also, to allow and pay to said Chorpenning $30,000 per annum from the 1st day of July, 1853, when he resumed service under the contract of Woodward & Chorpenning, down to the termination of his present contract, which said sum of $30,000 per annum shall be in lieu of the contract pay under both contracts. And the sums in this act authorized to he allowed shall be paid out of the treasury.
“Approved March 3, 1S57.” (11 Stat. L.,p 521.)
When the subject was brought before Postmaster General Brown, several of the items specified in the act were adjusted to the satisfaction of the claimant. He also made to the claimant an allowance under the first section of the act for the increased distance, via Ban Pedro, for the supply of Carson’s Valley and for the Eastern or Independ *145 ence mails. But the “pro rata increase of compensation,” as the first section terms it, was not reckoned by the rate-awarded by the third section.
Without passing upon the correctness or incorrectness of this construction it is sufficient to say, that when the report of the Postmaster General came before Congress the committees of both houses on post offices, being the same committees which had previously reported the bill, adopted a resolution wherein it is said that the act “ shall be construed so as to allow said Chorpenning for the extra services mentioned in the first section, a pro rata increase of pay to be calculated, upon the basis of the pay allowed him by the same act for services under the contract But before Postmaster General Brown could reconsider his award he died. Since then the subject has been brought before successive Postmasters General and successive Attorneys General, but without effecting a revision of the award, or a re-examination of it upon the merits. The prevailing opinion seems to have been that the decision of one Postmaster General was conclusive upon his successors.
The claimant has now come into this court under that provision of the act to establish a Court of Claims, (Act 24th Feb., 1855, 10 Stat. L., p. 612,) which gives us jurisdiction of a claim “founded upon any law of Congress,” and has put in evidence the contracts,' certificates, and affidavits which were before Congress when the private act was passed, and the decision or award of the Postmaster General thereon. To this the defendants answer: First, that the ex parte affidavits and papers which were before Congress are not evidence in this court; and second, that the decision of the Postmaster General, followed by the claimant’s acceptance of the amount awarded, was final and renders the case res adyudicata.
There is no doubt, under the previous decisions of the court, that these ex parte affidavits and certificates are not competent evidence to sustain an action founded upon contract, (Clark’s case, 1 C. Cls. It., p. 246; McKee’s case, ib., p. 336.) We do not understand the claimant to have offered them -for that purpose. He, on the contrary, is understood to set them up as a part of his case, and to request the court to award that relief upon them which the private act of Congress gives, and which the Postmaster General has refused.
The second objection occasions more doubt. It is a matter of daily practice in this court, that an ordinary decision of- an accounting officer in the adjustment of accounts does not hind the claimant in an action. It was also a matter of early decision, that when Congress by special enactment directed an accounting officer to restate an account, *146 bis statement did not bind the defendants. (Gordon’s case, 1 C. Cls. R., p. 1.) But, on the other hand, it was also early held that where Congress by special enactment “directed” an Auditor “to ascertain the damages and losses ” sustained by a contractor “ in the ‘particulars mentioned in the report of the Committee on Claims,” the award, it being accepted, was conclusive and binding upon the claimant. (Gilbert’s case,' 1 C. Cls. R., p. 108.) And to the same effect is the .more recent case of Carmick and Ramsey v. The United States, 2 C. Cls. R., p. 126, where the previous decisions are reviewed and reaffirmed.
In all of these cases the defendants have recovered. The various opinions of, the court have treated the question as though it were one of arbitration and award between ordinary suitors; and hence the belief prevails that such references by Congress (other than to mere accounting officers) are arbitrations, and the decisions subject to all the rules and principles applicable to and governing awards. But it is to be noted, on the contrary, that no decision has yet been rendered against the government on any so-called award, and the question is still entirely an open one whether such an award can be made the subject of an action against the government, or be given in evidence under the rule in the Duchess of Kingston case. The decision in each of the cases before cited may have been right, but the reasoning wrong; and it remains to be determined, when the proper case shall present the question, whether the court should treat these references as arbi-trations established by the consent of the parties and limited only by the terms of the submission, or as special tribunals established by express legislative enactment, and possessed of that exclusive jurisdiction which has recently received a full and careful exposition in the case of Meade v. The United States, 2 C. Cls. R., p. 226.
The case at bar, however, is different from all the others. The claimant does not sue upon the award, for he has received the full amount thereof, but attacks it as erroneous. Neither does he sue upon an express or implied contract, but seeks to evade the award as the mere statement of an accounting officer. He, in effect, comes into court and asks the court, first, to review the decision of the Postmaster General, and second, to assume the duty with which he was charged and become the minister of Congress in carrying out the intent of this particular law.
It is not necessary that an action here be founded upon contract either express or implied. For the statute has authorized actions “founded upon any law of Congress,” of which a familiar example are the pension cases. Yet there, a party gives evidence to show that he *147 is entitled to tbe benefits of tbe law, and tbe court find the facts accordingly. But here, there is no evidence to establish any facts constituting statutory conditions. All that tbe court can do is to take up the papers referred by Congress to tbe Postmaster General and act as be should have acted — as an arbitrator, if be was to have been an arbitrator, or as an accounting officer, if be was to have been an accounting officer.
Tbe case which most closely resembles tbe claimant’s in this particular is that of Riley v. The United States, 1 C. Cls. R., p. 299. There Congress by special enactment bad required “ the accounting officers of the treasury ” to credit General Riley on the settlement of bis accounts with certain disbursements, of which he should produce the proper vouchers. In the settlement of these accounts the accounting officer of the treasury did not do this, but disallowed certain items which had been clearly allowed by Congress. The claimant sought to recover those items by an action in this court, and all of the judges regarded the action as well brought and acquiesced in rendering a judgment. We may, therefore, conclude in this case that if the Postmaster General acted in a ministerial capacity and as the chief accounting officer of his department to allow the items which Congress had rendered fixed and certain, then that the action will lie and that the court may re-examine the claimant’s case. If, on the contrary, the Postmaster General acted or was to act in a judicial or quasi judicial character, either as arbitrator or as a special tribunal invested with the sole jurisdiction of the claim, then Ms award was final and conclusive, and its errors cannot be corrected by an action in any other tribunal.
The language of the private act is not so decisive and clear as might be wished. The first and second sections say the Postmaster General “is required to adjust and settle the claim of said Ohorpenning;” the third, that he “ be required to allow and pay to said Ohorpenning his full contract pay,” &c. The first and second sections relate to damages outside of his written and formal contract, viz : For services in carrying the mails an increased distance by San Pedro; for supplying the post office in Carson’s Valley; for carrying an increased amount of mail matter; and for damages caused by the annulment and suspension of his formal contract. The third section relates simply to the claimant’s “ contract pay,” giving it to him in full during the suspension of his contract, and increasing it after he recommenced his services.
The duty assigned to the Postmaster General by the third section is .manifestly ministerial. He is simply to “ allow and pay ” to the claimant a certain fixed compensation under certain express contracts,. *148 and the language “ allow and, pay” is appropriate to such purely ministerial action. But the claims now before us do not spring from the third section, but from the first. The language there is different and seems to impart a different duty in the contemplation of Congress. There has-been no fixed form of language on the part of Congress in these private acts; and in the cases where the court have held the award of the officer binding and conclusive the wording has varied. In Gilbert’s case, (1 C. Cls. R., p. 108,) it is “ to ascertain the damages and losses on just and equitable principles.” In Kellogg’s case, (2 ib., p. 310,) it is “ to settle and adjust ” “ on principles of justice and equity.” In Carmick and Ramsey’s'case, (2 ib., p. 126,) it is to '‘adjust the damages ” and “ adjudge and award to them according to the principles of law, equity, and justice.”
The character of the reference does not depend on the precise form of the language employed by Congress, but on the nature of the duty assigned to the officer. In this case the duty assigned by the first section of the act was “ to adjust and settle ” a claim for services at a rate prescribed by the same statute. The rate of compensation was fixed and certain; but the services were undetermined, being such as were “ shown by the affidavits and proofs on file in the House of Representatives.” This would imply that the officer must exercise a judicial discretion, and from “the affidavits and proofs” deduce, like a jury, the ultimate facts to which the statute might be applied. Still, as the statute did not allow these ultimate facts to be determined upon ordinary evidence, but limited the officer to certain “ affidavits and proofs on-file” it was possible that those affidavits and proofs contained specific statements of the services and were referred to by ■Congress as mere accounts and vouchers, leaving - the duty of the Postmaster General simply one of calculation, and involving no discretion or judgment as arbitrator on his part. But on looking into the “ affidavits and proofs ” we find they are, as their description imports, a mass of testimony from which the facts -would have to be deduced as from ordinary evidence, and from which very different conclusions might be drawn by different tribunals. We find, also, that it would be difficult and perhaps impossible for any tribunal to act intelligibly upon them without an extrinsic knowledge of the transactions and business pf the Post Office Department. In his decision upon this claim the Postmaster General says : “ The settlement of this claim has not been made without considerable embarrassment. The act of Congress was peremptory to adjust and settle, not according to the proofs that might be taken before the final action, but as shown by the proofs and affi *149 davits on file in tbe House of Representatives. These were to be tbe sole guides in tbe settlement, and neither tbe records of tbe department nor any contradictory or explanatory testimony could be taken by the government to assist in attaining what might be considered exact justice in the case.” These facts and this opinion strengthen tbe conviction that it was tbe intention of Congress to commit tbe discretion of settling tbe claimant’s demands to an officer peculiarly able to reach a just and intelligible conclusion, and possessed of all the knowledge and experience necessary to enable them to be adjusted according to tbe established usage of tbe department. It, therefore, seems to us that the Postmaster General was invested with an exclusive jurisdiction of .the case which was necessarily final. In the important case before cited (Meade v. The United States, 2 C. Cls. R., p. 226) a majority of the judges were agreed that the special tribunal committed an extraordinary error of law, and that the claimant there had been subjected to needless vexation and injustice. Yet we were also agreed that if the special tribunal had jurisdiction of the cause of action its decisions could not be reviewed or questioned here, and that it absolutely concluded and determined the rights of the parties. The principle seems applicable to this case, and we think it cannot be inquired into upon its merits.
The judgment of the court is that the petition be dismissed.