ERWIN *v.* UNITED STATES.

*(District Court, S. D. Georgia, E. D.   January 17, 1889.)*

1. COURTS—FEDERAL JURISDICTION—CLAIMS FOR FEES.
    The act of 22d February, 1875, (18 St. at Large, 333,) which requires that the accounts of district attorneys, clerks, marshals, etc., shall be forwarded, "when approved," "to the proper accounting officers of the treasury," does not make presentation to such officers a condition precedent to a right of action, nor is rejection of a claim by the accounting officers of the treasury such a determination of a "commission or department authorized to hear and determine," in the meaning of the act of March 3, 1887, (24 St. at Large, 505,) as will bar an action in the proper courts.

2. CLERKS—FEES.
    While the general rule is otherwise, when a statute is silent as to compensation, if additional labor is imposed upon a clerk, not in the line of the duties ordinarily appertaining to such an office, and if contemporaneous construction of the statute by the attorney general, and analogous provisions of other statutes subsequently passed, indicate an intention to pay for such services, the officer is entitled to compensation.

3. SAME—SERVICE AS JURY COMMISSIONER.
    A clerk of a circuit or district court of the United States is entitled to compensation for revising the jury-box at the rate of five dollars per day for a period not exceeding three days for a term of the court.   The clerk is entitled to charge 15 cents per folio for recording the names, residences, etc., of jurors, on a record which he is required to make by a rule of court.

4. SAME—ATTENDANCE—PER DIEM—ATTENDANCE OF DEPUTY.
    Where his deputy attends a session of the court, the clerk is entitled to a *per diem* compensation for such attendance, even though the clerk has received a *per diem* for his personal attendance the same day at a session of the court at another place.

5. SAME—STATUTE—REPEAL.
    The proviso relative to compensation for attendance of court officers, in the act of August 4, 1886, (24 St. at Large, 253,) was repealed by the proviso covering the same subject-matter in the act of March 3, 1887, (24 St. at Large, 541.) And since the passage of the latter act it is not necessary that business be transacted in court to entitle the clerk to his *per diem;* it is sufficient if the court be opened for business by the judge.

6. SAME—SERVICE AS COMMISSIONER.
    The offices of clerk and commissioner are compatible.   A person who holds two distinct compatible offices may receive the compensation of each.   A clerk is given a *per diem* fee "for his attendance" at a session of the court; a commissioner is given a *per diem* fee "for hearing and deciding,"—services clearly distinct.

7. SAME—ATTACHMENT FOR CONTEMPT—DOCKET AND RECORD FEES.
    An attachment against a defaulting witness or juror for contempt of court is an independent suit, and a "cause" for which a docket fee is chargeable under the fee-bill.   The clerk is required to make a final record of the proceedings in such a case.

8. SAME—WARRANT FOR TRANSPORTATION—DOCKET FEES.
    The clerk is entitled to a docket fee for a hearing by the court on application for a warrant for the transportation of a defendant to another district under the provisions of section 1014, Rev. St.

9. SAME—FILING PAPERS.
    The clerk is entitled to charge for filing each separate paper sent up by commissioners after hearing in criminal cases, and for filing each separate account of deputy-marshals, being the vouchers to accounts current of the marshal.

**10. SAME—APPROVING COURT OFFICIALS' ACCOUNTS.**

The fees of the clerk for entering orders approving accounts of marshals, clerks, attorneys, commissioners, etc., as required by the act of February 22, 1875, (18 St. at Large, 333,) and for certified copies of such orders for the department, are properly chargeable against the United States.

**11. SAME—ENTERING OFFICIAL PROCEEDINGS.**

Where, by order of the court, the clerk enters upon the minutes, as memorial services in respect to the late vice-president, a proceeding in court of official character, the fee for entering is properly chargeable to the government.

**12. SAME—REPORTING ACCOUNT OF WITNESS AND JURY FEES.**

The statute requires that jurors and witnesses shall be paid upon the orders of the court. When the clerk states the accounts of jurors and witnesses, taking their affidavits as to travel and attendance, and presents the accounts stated in a report to the court for its approval, he is entitled to the fee prescribed by the statute "for making any report." The original orders signed by the judge should be entered of record, and placed upon file by the clerk, and he is entitled to a fee of 10 cents for filing each.

**13. SAME—CRIMINAL PROCEDURE—COMMITMENT.**

In a state where the use of local jails for United States prisoners is permitted, whenever a prisoner is committed to jail a copy of the writ of commitment showing grounds thereof should be left with the jailer. In case of a proceeding before a judge or commissioner, in which it is necessary to commit the defendant to jail to await a hearing or pending examination, a writ to commit is necessary, setting forth the cause of detention, and why examination is postponed. After hearing and order committing for trial, a final writ of commitment is necessary, reciting the hearing, finding of probable cause, and that prisoner is committed in default of bail to await trial. Where a defendant is arrested on bench-warrant, and brought before the court, and is committed in default of bail to await trial, the writ of commitment should state the cause of detention until a trial can be had. After conviction a final writ of commitment is necessary setting forth the fact of trial and conviction, and the term of imprisonment prescribed in the sentence. The copy commitment delivered to the jailer should, where practicable, be certified, and bear the seal of the court.

**14. SAME—FINAL RECORD.**

A state law, passed since 1789, cannot affect criminal procedure in the federal courts. Unless there be an express statute to the contrary, the federal courts are governed in criminal causes by the general common-law procedure. A final record was required to be made by the clerk at common law, and the general method of making the record prescribed by the common law should be followed now, subject to such changes as have been wrought by the character of our institutions, and the modifications made necessary by the enlarged bill of rights of the federal constitution.

**15. SAME.**

A criminal information must be founded on an affidavit charging a crime, and a preliminary hearing finding probable cause, and fixing reasonable bail by the committing magistrate, otherwise the proceeding is not in accordance with due process of law, and is contrary to the fourth, fifth, and eighth amendments to the constitution. The proceedings before the committing magistrate showing a compliance with these constitutional provisions, being a necessary part of the proceeding, should be entered upon the final record.

**16. SAME—SUBPŒNAS—COPIES.**

At common law the names of only four witnesses could be included in one writ of subpœna. The witness was served by leaving with him a copy of the subpœna, or a ticket which contained the substance of the writ. It was the duty of the party or his attorney to make the copy subpœnas or tickets, and furnish them, with the writ, to the officer for service. Section 829, Rev. St., requires that the clerk shall insert in each writ of subpœna the names of as many witnesses in a cause as convenience in serving will permit. Where the clerk makes the copy subpœnas or subpœna tickets, and furnishes them to the marshal for service, at the request or by the acquiescence of the district attorney, the clerk is entitled to charge the government for making such copies.

17. SAME—COUNTING RECORD—"FOLIO."

In determining the number of folios in a final record each separate and distinct order, notice, or other paper is to be counted separately, according to the rule prescribed in section 854, Rev. St., and the aggregate of the folios so found is the number of folios in the record.

*(Syllabus by the Court.)*

At Law.   Action to recover fees.

*Marion Erwin, in propria persona.*

*Du Pont Guerry,* U. S. Atty.

### FINDING OF FACTS.

SPEER, J.   This suit was brought under the act of congress of March 3, 1887, which confers upon the district court of the United States concurrent jurisdiction with the court of claims of all demands against the government not sounding in tort, in amounts not exceeding $1,000, and the same jurisdiction upon the circuit courts of demands exceeding $1,000 and not exceeding $10,000.   The issues formed in these novel but salutary proceedings are triable by the court without the intervention of a jury.   In the suit before the court the government was represented by the United States attorney, and the plaintiff appeared *in propria persona.*   The claimant was appointed clerk of the district court of the United States for the Southern district of Georgia on the 17th day of March, 1883, and has continued to hold that office until the present time.   He rendered, at various times, his accounts for fees claimed to be due by the government, which accounts were duly presented and approved by the court, as required by the Revised Statutes, § 846, and the act of February 22, 1875, (18 St. at Large, 333.)   The accounting officers of the treasury department disallowed quite a large number of the items charged. The claimant made up an account for the aggregate amount of these disallowances running back to the date of his appointment, and included therein also similar items for services rendered which had not theretofore been included in the accounts rendered to the department because of the said adverse rulings on the legality of the charges.   This account was presented and sworn to in open court in the presence of the district attorney, the claimant stating at the time that the account was for items disallowed in his accounts by the accounting officers of the treasury, and that it was his purpose to bring suit for the same in this court.   Upon objection made by the district attorney the court held that it was not necessary or proper for the court to make any order in the premises at that time; that the legality of the charges would be passed upon when the account was sued and should come up for trial regularly.   The claimant was not, however, to be deprived of any advantage which might accrue to him by reason of his having presented the account with all its items for the approval of the court, as prescribed by the act of February 22, 1875, (18 St. at Large, 333.)   It is upon this account that the claimant sues.   The petition contains also a count for work and labor, in the usual *indebitatus assumpsit* form.   In the lengthy bill of particulars annexed to

the petition all the items of disallowances of a similar character have been collected and ranged under appropriate heads, making 20 different items to be passed upon. It will be found convenient to set out the facts bearing upon each item as each is taken up for consideration.

## CONCLUSIONS OF LAW.

"The act of 22d February, 1875, (18 St. at Large, 333,) which requires that the accounts of district attorneys, marshals, clerks, etc., shall be forwarded 'when approved,' 'to the proper accounting officers of the treasury,' does not make presentation to the accounting officers a condition precedent to an action." *Ravesies* v. *U. S.*, 21 Ct. Cl. 243. It follows, therefore, that, the accounting officers of the treasury having ruled against the legality of charges of a certain class for services performed, on the presentation of a former account, it is unnecessary for the clerk to include in subsequent accounts charges for similar services as a prerequisite to his right to sue for the same. On the other hand, there are claims relative to which the department may be invested with such powers as will make a rejection by its officers final, even as against the courts. *Chorpenning* v. *U. S.*, 3 Ct. Cl. 140; *Meade* v. *U. S.*, 9 Wall. 691. But the rejection of a claim by the comptroller or the accounting officers of the treasury is not the determination of a "commission or department authorized to hear and determine," which will prevent the revision of such a finding by the proper courts. Section 191, Rev. St.; *Chorpenning* v. *U. S.*, *supra; U. S.* v. *Saunders*, 120 U. S. 126, 7 Sup. Ct. Rep. 467.

## CONSIDERATION OF THE CLAIM BY ITEMS.

*Item* 1. Charge for necessary time required, (not exceeding three days for any one term of the court charged,) and services rendered in procuring and selecting the names of competent jurors from the body of the district, and revising the jury list and box under the orders of the court, at $5 per day, $75.

### FINDING OF FACTS.

The services were performed as charged. The nature of the services,— the selection of competent jurors from the body of a district containing 79 counties, and covering two-thirds of the state of Georgia,—was such that it could not be conveniently performed during the sessions of the court, when the time of the clerk is occupied with court work, and the jury-boxes, for obvious reasons, cannot be revised. The selection of competent jurors requires much correspondence, the exercise of great care, and sound judgment. It has been the practice in this district, whenever in the judgment of the court the jury-box needed revision, to make an order before the close of one term of the court, requiring the revision to be made during vacation for the next term of the court. The *per diem* charges here made are not for days when there were charges by the clerk for attendance in court. The several charges aggregated by this item were disallowed by the comptroller as not warranted by law.

### CONCLUSIONS OF LAW.

Jurors to serve in the courts of the United States were formerly selected in accordance with the laws of the several states. Section 800, Rev. St. By the act of June 30, 1879, a new and uniform method was established for all the federal courts. Jurors possessing the proper qualifications were thereafter required to be selected by the clerk and a jury commissioner, to be appointed by the judge, and the names so selected to be placed in a box, from which the juries were to be drawn as occasion required. 21 St. at Large, 43; 1 Supp. Rev. St. 497. Here was a new, important, and arduous duty placed upon the clerk, not contemplated at the time of the enactment of the clerk's fee-bill in 1853, (section 828, Rev. St.;) and yet the act is silent as to compensation to the clerk or to the jury commissioner. If the silence of the act in this particular be indicative of an intention to throw this additional labor upon the clerk without any compensation therefor, as congress had an undoubted right to do, it would be indicative also of an intention not to compensate the jury commissioner, whose appointment is provided for, also, and to make that office purely honorary. But the attorney general appears to have held otherwise. He allowed what he considered reasonable compensation to jury commissioners out of the fund appropriated for the miscellaneous expenses of the courts. Annual Report of Attorney General for 1883, p. 19. For weight to be given such opinion, see *U. S.* v. *Hill*, 120 U. S. 180, 7 Sup. Ct. Rep. 510, and cases cited. Besides, the appropriation bill of March 3, 1885, (23 St. at Large, 511,) had a provision for "compensation for jury commissioners, $5 per day, not exceeding three days for any one term of the court." This is a legislative interpretation of the statute coinciding with the contention of the claimant. A similar provision is contained in each subsequent appropriation. The duties of the clerk in revising the jury-box are not those usually coming within the functions of the office of a clerk of court. In effect, the act creates two new officers,—the jury commissioners of the court,—one of these commissioners to be appointed by the court, and the clerk of the court *ex officio* to be the other. In point of fact the clerk is *ex officio* a jury commissioner, and it seems clear that he is entitled to compensation as such out of the appropriation for pay of jury commissioners at the rate of five dollars per day, as provided for by the several appropriation acts; or at least the intention to pay at that rate may be inferred from those acts, and whether the clerk is entitled to pay out of those appropriations or out of the regular appropriation for fees of clerks is immaterial. See *U. S.* v. *Brindle*, 110 U. S. 688, 4 Sup. Ct. Rep. 180.

*Item* 2. Charge for making record of names, residence, etc., of jurors on jury-list record, three dollars, and making copy of the names, etc., for the jury-box, two dollars.

### FINDING OF FACTS.

It is not denied that the services were rendered, but the disallowance by the comptroller is stated in his report to be "because not authorized to a clerk; this is the work of the jury commissioner."

## CONCLUSIONS OF LAW.

The statute does not make it the duty of the jury commissioner to make such a record, but the duty is imposed upon the clerk by rule 60 of this court,—a rule prescribed by the late Honorable W. B. WOODS, when circuit judge. The importance of the record cannot be denied, and the clerk is entitled to charge for making any record at 15 cents per folio, and this is the amount charged. It is conceded that if the clerk is entitled to pay for revising the jury-box, that the charge of two dollars for making copy of names, etc., for the jury-box is erroneous, as being properly within the services for which the *per diem* is provided.

*Item* 3. Charge for necessary attendance under section 584, Rev. St., by deputy, at Savannah. on the opening day of the May term, 1884, and on the opening day of the November term, 1887, $10.

## FINDING OF FACTS.

These *per diem* charges were disallowed by the comptroller because the clerk charged for and received a *per diem* fee for his personal attendance at a session of the court at Macon on the same days; the comptroller holding that only one *per diem* can be charged by a clerk, even though the court is in session at two different places in the district at the same time, and even though the clerk is compelled to be at one place himself, and have a deputy in attendance at the other. It is not denied that the services were rendered as stated.

## CONCLUSIONS OF LAW.

The first question that arises is: How far can a clerk be represented in the performance of his duties by deputy, and whether he is entitled to receive the usual fees for work done, when the service is performed by deputy? The powers and duties of deputy-clerks are not fixed by section 558, Rev. St., which provides for their appointment. But it is provided that their salaries must be paid by the clerks from the earnings of the clerk's office under the fee-bill. Sections 561, 839, Rev. St. And the clerk is responsible for the acts of his deputy. Section 796, Rev. St. For these reasons the right of the clerk to receive the fees earned by his deputy stand on the same footing as that of the marshal to receive the fees earned by his deputy, and the relations between the two cannot be satisfactorily illustrated by the relations between a district attorney and an assistant district attorney. The latter is paid a salary by the government, and the district attorney is not responsible for his acts. *Townsend* v. *U. S.*, 22 Ct. Cl. 214. "A deputy is said to be one who occupieth in right of another, and for whom regularly his superior shall answer." "A deputy has not any estate or interest in the office, but is as servant to the officer." "A deputy cannot regularly have less power than his principal." 7 Bac. Abr. 316, (L.) "Where the office of registrar to the bishop of Rochester was granted to J. S., who was an infant of twelve years of age, this was held a good grant, the office

being to be exercised by him or his deputy." Id. 312, (I.) As a matter of practice, it is as often the case as otherwise, that the duties of a clerk or marshal in the court-room are attended to by deputy, while the principal officer is engaged in the performance of other duties appertaining to his office elsewhere. This is particularly true in districts in which there are several places of holding court. Hon. William Lawrence, late first comptroller, in passing upon a similar question before the department, said:

"A usage so long continued as to make it law, if there ever could have been any doubt about it, permits a deputy marshal to attend the sittings of courts, and gives the marshal a right to the *per diem* fee of five dollars for this service." *Double per Diem Case*, 5 Lawr. Dec. 279.

The next question to be considered is, whether the clerk is entitled to two *per diem* fees on the same day,—one for his personal attendance at a session of the district court for the Western division of the district at Macon, and the other for the attendance of his deputy at a session of the district court for the Eastern division of the district at Savannah. The act of congress providing for the holding of courts in two places in the Southern district of Georgia, is entitled "An act to provide for circuit and district courts of the United States at Macon, Georgia." The act provides that "said Southern district shall be, and hereby is, divided into two divisions, to be known as the 'Eastern and Western divisions of the Southern district of Georgia.'" Act Jan. 29, 1880, (21 St. at Large, 62.) Careful consideration of the provisions of this act leads to the conclusion that separate, independent, and distinct courts were created in each division. In fact the "district court of the United States for the Eastern division of the Southern district of Georgia" is a tribunal as distinct from the district court of the United States for the Western division of the Southern district of Georgia, as was the "Fifth circuit court of the United States for the Northern district of Georgia" from the "Fifth circuit court of the United States for the Southern district of Georgia," before the passage of the act referred to. The terms of the courts in the two divisions were so fixed by the act that the sessions at Macon and Savannah frequently conflict. It often happens that while the judge and clerk are in attendance upon the district court in one division, the court in the other division must be opened and adjourned under the provisions of sections 583, 584, etc., of the Revised Statutes, and the clerk must have a deputy in attendance there. Section 828, Rev. St., contains the following provision in reference to the clerk's fee for attendance:

"For traveling from the office of the clerk, where he is required to reside, to the place of holding any court required by law to be held, five cents a mile for going, and five cents for returning, and five dollars a day for his attendance on the court while actually in session."

"Court" is here used clearly in the sense of "term" or "session" of the court, corresponding to the second definition of the word given by Mr. Bouvier in his Law Dictionary, because it is the term or session of the court which is "required by law to be held" at a particular time and place. And "the court," referring to "any court," makes it the fair in-

tendment of the clause that the clerk shall be entitled to five dollars a day for his attendance on any term of any court required by law to be held at any particular place, while the court is actually in session. The fee is "for his attendance" at that particular place, and on that particular court, and "five dollars a day" is the measure of his compensation for that particular service. *Goodrich* v. *U. S.*, 35 Fed. Rep. 193. Therefore pay for his attendance on one court at a particular place cannot be pay for his attendance by deputy on a different court in a different place. And this is in accordance with the substantial justice of the case. The *per diem* of the clerk for his attendance in the one division is, under the law, justly and fully earned by his personal attendance on that court; and since he must, under the law, pay the expenses of maintaining and keeping a deputy in attendance at the court in the other division, and be responsible for his acts, it is but just that he should receive the fee for such attendance, so that he may pay the deputy from his earnings, and have a margin of compensation for his own supervisory care and responsibility. The Honorable William Lawrence, late first comptroller, passed upon a similar question in case of a marshal's account pending before the treasury department and reached the same conclusion. *Double per Diem Case*, 5 Lawr. Dec. 278.

*Item* 4. Charge for necessary attendance at May term, 1887, at Savannah, two days, May 25th and 28th, on which the court was opened for business by the judge in person, $10.

### FINDING OF FACTS.

The court was opened for business by the judge, but it is admitted that no business was transacted in court on those days other than the reading and approval of the minutes, the entry of the clerk of the names of the officers of court in attendance, and the making of the entries opening and adjourning court. The disallowance by the comptroller was "because no business was actually transacted on those days."

### CONCLUSIONS OF LAW.

This disallowance is probably based upon the provision in the appropriation bill of August 4, 1886, providing as follows:

"Nor shall any part of the money appropriated by this act be used in the payment of a *per diem* compensation to any clerk or marshal for attendance in court except for days when business is actually transacted in court, and when they attend under sections 583, 584, 671, 672, and 2013 of the Revised Statutes." 24 St. at Large, 253.

But the appropriation bill of March 3, 1887, contained a clause covering the same subject-matter, and was not limited to that appropriation in its application. It provides that "hereafter" the clerk shall not charge a *per diem* fee, "except for days when the court is open by the judge for business, or business is actually transacted in court," and when the attendance is "under sections 583, 584, 671, 672, and 2013 of the Revised Statutes." 24 St. at Large, 541. "Where two acts are not in all respects repugnant, if the later covers the whole subject of the

earlier, and embraces new provisions which plainly show that it was intended as a substitute for the first, it will operate as a repeal." *King* v. *Cornell*, 106 U. S. 396, 1 Sup. Ct. Rep. 312. Speer, Rem. Causes, 73. Therefore, when the court was opened for business by the judge on May 25 and 28, 1887, and the clerk was in attendance, he is entitled to his *per diem* whether business was transacted or not.

But, independently of the above considerations, the clerk is entitled to his judgment here for these charges. Under the provisions of the fee-bill, (section 828, Rev. St.,) the clerk was entitled to a *per diem* for his attendance on the court when actually in session even though "no suitors appeared, or for other reason the court, in its discretion, adjourned to a future day." *Jones* v. *U. S.*, 21 Ct. Cl. 1; *Bill* v. *U. S.*, (Ct. Cl. No. 15,-570,) (23 Ct. Cl. 142.) *Goodrich* v. *U. S.*, 35 Fed. Rep. 193. The limitation in the act of August 4, 1886, was expressly confined to the money appropriated by that act, and did not therefore repeal the general statute giving the clerk the right to his *per diem* for his attendance for each day when the court is actually in session. "A statute which fixes the annual salary of a public officer at a designated sum, without limitation as to time, is not abrogated or suspended by subsequent enactments appropriating a less amount for his services for a particular fiscal year, but containing no words which expressly or impliedly modify or repeal it." *U. S.* v. *Langston*, 118 U. S. 389, 6 Sup. Ct. Rep. 1185.

*Item 5.* Charge for necessary attendance in the district court at Macon at the October term, 1887,—October 10th, 17th, November 9th, 19th, 22d, and 26th,—six days, $30.

### FINDING OF FACTS.

It is not denied that the service was performed as charged, but the disallowance by the comptroller is "because the same days were charged and allowed him as commissioner of the circuit court."

### CONCLUSIONS OF LAW.

It is not questioned that the office of clerk and United States commissioner are compatible offices. From the organization of the judicial machinery of the government it was found convenient to confer upon the clerk of the court the powers of circuit court commissioner, and most of the clerks have had those powers conferred upon them. The appointments have been made and recognized as valid by many of the most eminent of our federal judges, notably by the late Justice WOODS, in this circuit. It is provided that "no marshal or deputy-marshal of any of the courts of the United States shall hold or exercise the duties of commissioner of any of the said courts." Section 628, Rev. St. But, notwithstanding the well-known practice of appointing clerks as commissioners, there has never been any legislation prohibiting such appointments. The late comptroller, William Lawrence, held that such offices were not incompatible, nor was that of collector of internal revenue, and commissioner. *Wade's Case*, 1 Lawr. Dec. 302, 27 Int. Rev. Rec. 16, Jan. 17, 1881. The regulations of the post-office department, in prohibiting certain em-

ployments to postmasters, makes an exception in the case of appointment as commissioners. It is safe to say that clerks holding that position have performed its duties with as much skill, honesty, and fairness as any other class of men who have been appointed to the position. A person who holds two distinct compatible offices may lawfully receive the salary or compensation of each. *U. S.* v. *Saunders*, 120 U. S. 127, 7 Sup. Ct. Rep. 467; *U. S.* v. *Brindle*, 110 U. S. 688, 4 Sup. Ct. Rep. 180; *Converse* v. *U. S.*, 21 How. 463. The idea of the accounting officers seems to be that, the claimant having been paid a *per diem* for hearing and deciding as commissioner on a day certain, that, even though he was not occupied in that service but a portion of the day, that his time was purchased by the government for all purposes during that 24 hours. The same reasoning would have prevented Saunders from receiving two salaries for the same month, but the supreme court held that as the offices were not incompatible, and as he had performed the work of each office, he was entitled to both salaries. The statute gives the clerk five dollars per day "for his attendance" on the court while actually in session. The court day may not last but 10 minutes, and yet the *per diem* for that court day will be fully earned at the expiration of that 10 minutes. *Bill* v. *U. S. supra; Goodrich* v. *U. S.*, 35 Fed. Rep. 193. On the other hand, the statute gives the commissioner five dollars per day "for hearing and deciding" on criminal charges "for the time necessarily employed." As to what constitutes a hearing and deciding, see *Harper* v. *U. S.*, 21 Ct. Cl. 56. The respective services, therefore, are entirely distinct, and for the performance of each the statute prescribes a fee.

*Item* 6. This item has been reconsidered and allowed by the comptroller since the institution of the suit, and has consequently been stricken out by amendment.

*Item* 7. Charge for making dockets and indexes in cases of attachment for contempt, for defaulting witnesses and jurors, $7; and for making final record in such cases, $3.75.

### FINDING OF FACTS.

This item was disallowed by the comptroller "because these proceedings are not cases within the meaning of the fee-bill," and "complete records not necessary as to such proceedings."

### CONCLUSIONS OF LAW.

It is unnecessary to go into the distinctions drawn by the courts, as to when proceedings to punish for contempt are to be regarded as on the civil or criminal side of the court. These particular proceedings were instituted by the government. The question raised is whether such proceedings are "causes" within the meaning of the fee-bill, for which a docket fee can be taxed. Mr. Bouvier defines a "cause" to be "any question, civil or criminal, contested before a court of justice." "Case" and "cause" are synonyms. *Blyew* v. *U. S.*, 13 Wall. 581. In proceedings for contempts for failure to obey the orders or writs of a court, the parties have the right to be heard, and to purge themselves of the

contempt if they can. Such a proceeding is commenced by a regular process of the court, and there is a question to be contested and decided. "When a court commits a party for contempt, their adjudication is a conviction, and their commitment in consequence is execution." *Ex parte Kearney*, 7 Wheat. 38. In that case, where a person imprisoned for contempt by the circuit court applied to the supreme court of the United States for a writ of *habeas corpus*. it was denied because "this court has no appellate jurisdiction in criminal cases." There is in such cases process, judgment, and execution under which the defendant may be imprisoned, and his property sold and title pass. The necessity, therefore, for a record is absolute. A proceeding for contempt is a distinct and independent suit. *Hayes* v. *Fischer*, 102 U. S. 121. Comptroller Lawrence held that district attorneys were entitled to docket fees in such cases. *Contempt Case*, 5 Lawr. Dec. 255.

*Item* 8. Charge for making dockets and indexes, in case of a hearing before the judge on application for a warrant for the transportation of a defendant from the Southern district of Georgia to the district of South Carolina, under the provisions of section 1014, Rev. St., three dollars.

### FINDING OF FACTS.

This item was disallowed by the comptroller "because there was no case in the district court within the meaning of the fee-bill."

### CONCLUSIONS OF LAW.

The use of a docket containing an abstract of the proceedings in a case for convenient reference, as well during the trial of the case as afterwards, is well recognized. While the proceedings under consideration are before the district judge, there are questions to be decided which are frequently stubbornly litigated. Even cases tried by a commissioner are properly entered upon a docket. The docket fee is not prescribed by the fee-bill simply for cases tried in court; the language is broad enough to apply as well to cases tried before the judge; and where the orderly conduct of the public business requires such a docket to be kept, the clerk is the proper person to keep it, and is entitled to a charge therefor.

*Item* 9. Charge for filing each separate paper sent up by commissioners after hearing in criminal cases, $105.50.

### FINDING OF FACTS.

This item was disallowed by the comptroller because he alleges that it is the duty of the clerk or the commissioner to fasten all the papers sent up by the commissioner together, and file them as one.

### CONCLUSIONS OF LAW.

The rule of this court adopted on January 1, 1877, provides that after examination "all the papers in the case, including the affidavit and warrant to apprehend, and the recognizance, shall be forwarded at once by the commissioner to the clerk's office." Rules of Court, p. 36. There is no law or rule of court requiring the papers to be fastened together,

and, considering the use to which they are to be put in the further progress of the case, or in the examination of accounts of commissioners, such a practice would be exceedingly inconvenient. They must be separated necessarily; as, for instance, when the affidavit is used as a basis for an information, or the bond is forfeited, etc. Each paper should be filed for its permanent identification. The charge for filing each separate paper is authorized by the fee-bill. Section 828, Rev. St.; *Reed* v. *U. S.*, Ct. Cl. No. 14,980 (decided 1888;) *Goodrich* v. *U. S.*, 35 Fed. Rep. 193.

*Item* 10. Charge for entering orders approving accounts of commissioners, marshals, clerks, attorneys, etc. and for certified copies of orders, as provided by 18 St. at Large, 333, $79.80.

### FINDING OF FACTS.

It is not denied that the services were rendered, and the charges in accordance with the fee-bill, but the disallowances were made by the comptroller for the following reason: "All charges connected with the verification and approval of accounts of attorneys, marshals, clerks, and commissioners are disallowed, as not properly chargeable to the United States," and because the charge "is payable by the officer individually."

### CONCLUSIONS OF LAW.

By the terms of the act it is expressly provided that the accounts of clerks, marshals, and district attorneys shall be "rendered" to the court, and the officer shall prove the account in open court to the satisfaction of the court, by his own oath or that of other persons having knowledge of the fact. If the officer has done that, he has performed all that is required of him by the statute, and his account is fully rendered. There is something, however, for the court to do. It must cause to be entered of record an order approving or disapproving the account, as may be, "according to law, and just." The clerk is then required to file the duplicate accounts, and forward the originals to the proper accounting officers of the treasury. The officers having performed the services, the government is justly indebted to them to the full amount of the fees prescribed for the same without any deduction, and when they have presented their account in the manner prescribed by law they are not properly chargeable with the after-expenses incident to methods adopted by the government for its own convenience or protection. The injustice of adopting such a rule is particularly apparent in the case of the marshal, most of whose accounts rendered are not for fees, but for disbursements of funds intrusted to him for pay of witnesses, jurors, support of prisoners, and miscellaneous expenses of the courts; and in case of accounts rendered for actual expenses in the transportation of prisoners to the penitentiary, under section 5546, Rev. St., for which he gets no compensation whatever, and of which a separate account is required by the attorney general for each transportation, the performance of the duty would be an expense to the officer, which is clearly not contemplated by the statute. In the case of commissioners, the force of this reasoning is still more apparent, because

the act provides that all they have to do is to forward their accounts, duly verified by oath, to the district attorney, and he must see to the other proceedings. The clerk being entitled to the charges, they are therefore properly payable by the United States. *Reed* v. *U. S., supra.* Similar charges were considered by Comptroller Lawrence as, properly chargeable to the government. *Commissioners' Oath-Fee Case,* 5 Lawr. Dec. 350.

*Item* 11. Charge for filing each separate account of deputy-marshals, being the vouchers to accounts current of the marshal, $8.90.

### FINDING OF FACTS.

This item was disallowed by the comptroller as "unnecessary and unauthorized."

### CONCLUSIONS OF LAW.

The purpose of filing the duplicate accounts of officers of the court in the clerk's office is for ready reference. It is not practicable to fasten these vouchers together, and would make reference to them inconvenient. Besides, each separate voucher should be identified. The charge is authorized by the fee-bill. *Goodrich* v. *U. S.,* 35 Fed. Rep. 193.

*Item* 12. Charge for entering upon the minutes, by order of the court, proceedings in the court *in memoriam* on the death of the Honorable Thomas A. Hendricks, late vice-president of the United States, and for similar proceedings on the death of Justice W. B. Woods of the supreme court of the United States, $4.50.

### FINDING OF FACTS.

These charges were disallowed by the comptroller "as not payable by the United States."

### CONCLUSIONS OF LAW.

It has been the custom of this government, and of all civilized governments, from time immemorial, to pay suitable respect to the memory of its distinguished citizens, who die while in the public service. The halls of the legislative and judicial departments are draped in mourning, public buildings are clothed in black, and ships of war carry their flags at half-mast. Such acts are regarded as the acts of the government, performed through its public servants, and such trivial expenses as the purchase of bunting, etc., for such occasions have been universally recognized as an expense properly chargeable to the government. Proceedings in court in memory of a distinguished associate justice, or of a vice-president, stand upon the same footing, and the government could as well refuse to pay the printer who sets up the type for some eulogistic speech delivered in congress on similar occasions as to refuse to pay the clerk for recording a memorial resolution, entered upon its permanent records by the orders of the court.

*Item* 13. Charge for making reports of the amount of fees due by the United States to jurors and witnesses for travel and attendance, for the

approval of the court, as required by sections 846, 855, Rev. St., and for filing the orders to pay the same, $93.30.

### FINDING OF FACTS.

The charges aggregated by this item cover a period of three years, and may be consolidated thus: "Drawing 223 reports, 2f. each, at 15c., $66.90. Filing 264 orders to pay at 10c., $26.40." The reason assigned by the comptroller for the disallowance in his report No. 92,163 is as follows: "All charges for filing orders to pay jurors and witnesses disallowed. After such orders are entered on record, they should be given to the marshal to accompany his account as authority to pay." This position was apparently abandoned in subsequent reports, and a new position taken, as stated in the letter of the first comptroller to the clerk of August 3, 1886, which is in evidence, as follows:

"In accounts hereafter rendered you will not be allowed for drawing reports of attendance of witnesses and filing orders to pay witnesses, in addition to entering order on minutes. It seems sufficient that the orders should be entered on the minutes, and a copy of each order furnished to the marshal."

The practice in this district in regard to the payment of the fees due by the United States to witnesses and jurors is as follows: When a case has been disposed of, and the witnesses are discharged by the district attorney from further attendance, they repair to the clerk's office. The clerk then ascertains the exact amount due them for attendance and mileage, by examination of their subpœnas, questioning them as to the place from which they have traveled, and comparing their statements with a table of distances kept in his office for that purpose, and the witness is sworn on a jurat drawn on his subpœna ticket to the correctness of his claim. If any doubtful question arises it is referred to the presiding judge for his decision. The days attended, mileage, and amounts due the respective witnesses are then entered on a report, which is signed by the clerk, and submitted to the court for its approval. This report is in the following form:

"To the honorable the presiding judge of the district court of the United States for the Eastern division of the Southern district of Georgia: I have to report that the following-named witnesses are entitled to the amount set opposite their names, for their *per diems* and mileage for attendance upon the said court at and during the ——— term, 188 , to the truth of which account they have been duly sworn. ———————, Clerk."

Then follows the title of the case, and a list of the names of the witnesses, with the number of days attended and miles traveled, and the amounts due them respectively. This report is then submitted to the court, and, if adjudged correct, the following order is indorsed upon it:

"It is ordered that the marshal for this district pay to the above-named witnesses the amount set opposite their names for their *per diem* and mileage for attendance upon the court, as above stated.

"In open court, this ——— day of ———, 188–.

"———————, U. S. Judge."

A similar report and order is made where jurors are to be paid, except, of course, they do not attend in any particular case, while the fees of witnesses are properly taxed in the case in which they attend. The only question involved is whether these reports by the clerk are necessary for the convenient dispatch of the public business as incident to the method of payment of witnesses and jurors provided by the statutes.

### CONCLUSIONS OF LAW.

"In cases where the United States are parties the marshal shall, on the order of the court, to be entered on its minutes, pay to the jurors and witnesses all fees to which they appear by such order to be entitled, which sum shall be allowed him at the treasury in his accounts." Section 855, Rev. St. "No accounts of fees or costs paid to any witness or juror upon the order of any judge or commissioner shall be so re-examined as to charge any marshal for an erroneous taxation of such fees or costs." Section 846, Rev. St. The clerical work involved in the making up and stating the accounts of witnesses and jurors is very properly done by the clerk; the institution of the office is for the purpose of relieving the judge from clerical services. The judges could not perform these duties without serious interference with the dispatch of judicial business. That such accounts should be carefully made up and stated by some responsible ministerial officer of the court, is plain. The clerk cannot, under the statute, enter the order on the minutes, until the order is made; and no order fixing the exact amount to be paid, as is contemplated by the statute, can be made until the statement of the items of the account is presented to the court in proper form. The convenient dispatch of the business of the court makes it necessary that it should be presented to the court in such shape as to prevent the consumption of the time of the court unnecessarily in the consideration of details, and that is best accomplished by the report of the clerk to the court in proper form. It is true that in general the court may direct a clerk to enter upon the minutes an order not previously reduced to writing, but it is the universal practice where an order contains a number of details to write it out upon paper, and, after the signature of the judge is appended, it is handed to the clerk for entry on the minutes, the original being filed away in the clerk's office as a part of the files of the court. If the order is to be made by the court, the court must be first put in possession of its details. The reports being necessary, the clerk is entitled to 10 cents per folio for making the same. Section 828, Rev. St.; *Commissioners' Oath-Fee Case*, 5 Lawr. Dec. 350, note; *Singleton* v. *U. S.*, 22 Ct. Cl. 118. The fact that he is entitled to an additional fee for entering the order on the minutes, and for making a copy for the accounting officers of the treasury if they require it in the adjustment of the marshal's accounts, cannot affect the question. In regard to filing the orders to pay to which the signature of the judge is attached, such papers belong to the files of the court, and should be marked "Filed" by the clerk for identification. The charge of 10 cents for filing any paper is authorized by the fee-bill.

*Item* 14. Charge for issuing writs of commitments of defendants to jail to await trial, and for making certified copies for jailer, and entering marshal's returns, eight dollars.

### FINDING OF FACTS.

In two of the cases in question the defendants had been committed to Richmond county jail, after a preliminary examination before a commissioner there. At the ensuing term of the court the defendants were brought to Savannah for trial, and as the trial could not be had on the day on which they were brought to court, the court directed that the defendants be committed to the Chatham county jail to await trial, that jail being in the vicinage of the court; and the clerk issued the commitments accordingly. In another one of the cases the defendant was charged with murder on the high seas, and, pending a hearing postponed to another day, the district judge directed the clerk to issue a writ of commitment to Chatham county jail. In the other cases the defendants were brought into court on bench-warrants, and, in default of bail, were, by the direction of the court, committed to jail to await trial. Writs of commitment were issued by the clerk accordingly. These charges were disallowed by the comptroller "because the defendants were in the custody of the marshal under process."

### CONCLUSIONS OF LAW.

The point at issue turns upon the proper practice in such cases. "In a state where the use of jails, penitentiaries, or other houses is not allowed for the imprisonment of persons arrested or committed under the authority of the United States, any marshal in such state, under the direction of the judge of the district, may hire or otherwise procure, within the limits of such state, a convenient place to serve as a temporary jail." Section 5537, Rev. St. And in such cases no special process of commitment is necessary, the prisoners being already in the custody of the marshal, and their detention being still continued in his custody. *Turner* v. *U. S.*, 19 Ct. Cl. 629, No. 12,774; *In re Osterhaus*, (6th Circuit Mich.) 6 Amer. Law T. 519. But in a state, as in Georgia, (see section 359, Code 1882,) where the use of jails is allowed for United States prisoners, the statutes authorize their imprisonment there. *Ex parte Geary*, 2 Biss. 489. "And while so confined therein, shall be exclusively under the control of the officers having charge of the same, under the laws of such state or territory." Section 5539, Rev. St. The state jails are not under the control of the marshal, nor is the custody of the jailer the custody of the marshal in such cases, (*Randolph* v. *Donaldson*, 9 Cranch, 76;) and the statutes provide that "whenever a prisoner is committed to a sheriff or jailer by virtue of a writ, warrant, or *mittimus*, a copy thereof shall be delivered to such sheriff or jailer as his authority to hold the prisoner, and the original writ, warrant, or *mittimus* shall be returned to the proper court or officer, with the officer's return thereon." Section 1028, Rev. St. In regard to commitments to await trial, it has been held that it is proper for a commissioner to issue a writ of commitment on sending a prisoner

to jail pending an examination,—what is commonly called a "temporary commitment,"—provided the examination cannot be had at once; but examination should be held within 24 hours thereafter, unless special cause be shown. *U. S.* v. *Worms,* 4 Blatchf. 332. And it has been held that every writ of commitment must show sufficient cause on its face to justify the jailer in holding the prisoner. The copy of the commitment is the authority of the jailer to hold. *Ex parte Burford,* 3 Cranch, 448; *Ex parte Bennett,* 2 Cranch, C. C. 612; *U. S.* v. *Brown,* 4 Cranch, C. C. 333; *Ex parte Williams,* Id. 343; *U. S.* v. *Harden,* 10 Fed. Rep. 803. It follows, therefore, that in case of an examination before a judge or commissioner, in which it is necessary to commit the defendant to jail to await a hearing, or pending the examination, that a writ of commitment is necessary, setting forth the cause of his detention, and why the examination is postponed. After the hearing and finding of probable cause of defendant's guilt, a new writ of commitment is necessary, because, in order to justify the detention of the prisoner for months, as it sometimes happens, before he has been convicted of a crime, it should appear that he has had an examination before the committing magistrate, that probable cause of his guilt has been found, and that he is committed in default of bail. The same rule applies to proceedings before the court. If a pris-. oner is brought before the court in the custody of the marshal, on bench-warrant or otherwise, before trial, and it becomes necessary to commit him to the custody of any particular jailer for the first time, a writ of commitment is necessary, setting forth the cause of the detention. Again, after trial and conviction, when the court sentences a defendant to imprisonment for a term in any particular jail, a writ of commitment— commonly called the "final commitment"—is necessary, for the reason that the time and purpose of the imprisonment are entirely different. Nor is there anything in section 1030 of the Revised Statutes opposed to this procedure. That section must be construed with section 1028, because both sections are parts of the same act. Section 1030 provides that—

"No writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody; but the same shall be done on the order of the court or district attorney, for which no fees shall be charged by the clerk or marshal."

The meaning of this section is obvious. Where a prisoner has once been committed to jail to await trial or pending a trial, he may be brought out to court, or carried back to jail, a dozen or more times, and for day after day during the progress of the trial; and for this purpose no writ is necessary, because, after the jailer in the first instance has taken custody of the prisoner, the copy of the writ on which the commitment was made remains with him as his authority to hold. The statute is expressly limited to prisoners or persons already in custody, and the further use of the expression "remanding" shows clearly that it applies only to cases where the person has already been committed properly under the provisions of section 1028, because "to remand" implies a previous custody. The district attorney is given no power under the stat-

utes to imprison, and his powers here are clearly limited to the bringing in and remanding persons already imprisoned by competent authority. "Where special reasons exist why a warrant of commitment should be issued to the marshal and the jailer for the purpose of having the prisoner actually committed to jail, as was the case in the trial of Aaron Burr, cited by the claimant, (1 Burr's Tr. 351, 358, 359,) and as is frequently the case where the marshal has no sufficient conveniences for the safe-keeping of the prisoner outside of a jail, and a commitment to prison is actually made, it would seem not to be a simple case of remanding, and for the service of such a warrant by actual commitment the marshal might charge his fee." *Turner* v. *U. S., supra.*

*Item* 15. Charge for attaching seals to certified copies of commitments furnished for service on jailer when defendants are committed to jail, $1.60.

### FINDING OF FACTS.

These charges were disallowed by the comptroller "because the marshal and the jailer must take official cognizance of the signature of the clerk."

### CONCLUSIONS OF LAW.

Even if that be true, the copy of the commitment is the authority of the jailer to hold the prisoner. Other courts and other persons have the right to inquire into the cause of the detention of a citizen, and there is certainly no rule by which they are required to take official cognizance of the signature of the clerk of this court unless the seal of the court is attached. But judicial notice is taken of the seals of a superior court. Bouv. Law Dict. "Seal." It is true that under the comity of courts such a copy not under seal might very properly be taken as sufficient notice of the character of the custody, as to require that the proper officer of the government be notified of any proceeding looking to the release of a prisoner; but that comity has not always been respected by the state courts exercising *habeas corpus* jurisdiction, even in this district. The proper practice is to attach the seal of the court to such copies.

*Item* 16. This item has been stricken by amendment, because allowed by the comptroller since the bringing of the suit.

*Item* 17. Charge, in criminal cases brought by information, for entering on the final record the following proceedings: Affidavit, warrant of arrest, marshal's return, and finding of commissioner of probable cause of defendant's guilt, upon which the information is founded; commitment to jail in default of bond; recognizance in cases where given, and justification of surety, and waiver of homestead exemption where it is waived; petition and order for subpœnas on part of defendant at expense of the United States; commitment under sentence, and marshal's return,—$60.75.

### FINDING OF FACTS.

These charges were disallowed by the comptroller "because it was not necessary to copy the same to make proper final record."

CONCLUSIONS OF LAW.

The clerk must record all the orders, decrees, judgments, and proceedings of the court. Section 794, Rev. St. "In its general acceptation 'proceeding' means the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them, the mode of deciding them, of opposing judgments, and of executing." "Ordinary proceedings intend the regular and usual mode of carrying on a suit by due course at common law." Bouv. Law Dict. There are no statutes prescribing what records the clerk shall keep, or how they shall be kept in criminal cases. "Congress has never enacted a code of criminal procedure, and the states have no power to prescribe either modes of proceeding or rules of evidence in prosecutions for federal offenses. In a general way the federal courts must be governed in these respects by the common law." *U. S.* v. *Maxwell*, 3 Dill. 278. "In the administration of criminal law, unless there be an express statute to the contrary, we are governed by the general common-law procedure. In the administration of criminal law, and in criminal jurisprudence, we go to the common law for the purpose of ascertaining the modes of practice, the modes of procedure, the rights of defendants, the rights of the government, the duty of the court, and the duty of the jury, and we administer it according to that." *U. S.* v. *Nye*, 4 Fed. Rep. 890. "No law of a state made since 1789 can affect the mode of proceeding or the rules of evidence in criminal cases." *U. S.* v. *Reid*, 12 How. 361. Passing now to the common-law authorities: "A court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony. * * * The very creation of a new jurisdiction with the power of fine or imprisonment makes it instantly a court of record. A court not of record is the court of a private man whom the law will not intrust with any discretionary power over the fortune or liberty of his fellow subjects." 3 Bl. Comm. 24. Proceedings for contempt are therefore especially the subject of record. "Records are not complete until delivered into court on parchment; therefore a minute book from which an entry of the proceedings at sessions is made and from which book the roll containing the record of such proceedings is subsequently made up is not a record." Archb. Crim. Pl. 127. "The record of judicial proceedings is always in the first instance taken down by the clerk of the court in the way of short entries made upon his dockets, or of the indorsements upon papers filed, and the like. It is not until after the term of the court closes that the extended record, or record proper, is made; and for the making up of this record resort is had to the docket entries, to the accompanying files of papers, and to the several indorsements upon them; these serve as *memoranda* to the clerk. In England the extended entry, or record proper, is written upon parchment; in the United States books made of stout paper are used." 1 Bish. Crim. Proc. § 905. Mr. Bishop, in his work on Criminal Procedure, treats very fully the subject of making up the final record in criminal causes brought by indictment. See 1 Bish.

Crim. Proc. § 913. The principles laid down there may be applied to proceedings by information, bearing in mind that the validity of the two proceedings rest upon very different foundations. And it must be borne in mind that the constitution of the United States has placed certain restrictions upon the criminal procedure at common law, which makes it necessary that a record which is liable to be reviewed in a court above, should speak as to a compliance with these provisions. Thus "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amend. 4, Const. "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury; * * * nor be deprived of life, liberty, or property, without due process of law." Amend. 5, Const. "Excessive bail shall not be required." Amend. 8, Const. A criminal information must be founded on an affidavit charging a crime, and a preliminary hearing fixing bail, and finding of probable cause by the committing magistrate; otherwise the proceeding is not due process of law, and is contrary to the fourth and fifth and eighth amendments. *U. S.* v. *Shepard,* 1 Abb. (U. S.) 431; *U. S.* v. *Tureaud,* 20 Fed. Rep. 621; *Hurtado* v. *California,* 110 U. S. 516, 4 Sup. Ct. Rep. 111. It is very essential, therefore, that the commitment proceedings should be regular, and that the record should show it. It is only necessary to add that the definition of a recognizance is "an obligation of record." The justification is a part of the recognizance. The statute provides that writs of commitment shall be returned to the proper court or officer, with the officer's return thereon." Section 1028, Rev. St. A fee is provided for entering the return, and it is clearly contemplated as a part of the record. "It is the mode of executing judgment," as described under the definition of "proceedings." The petition and order for subpoenas on part of the defendant at the expense of the United States is part of the proceedings of the case, and in some cases may form an essential part of the record to be reviewed.

*Item* 18. Charge for making copy subpoenas (subpoena tickets, one for each witness in a case) for service by the marshal on witnesses for the United States, one folio each, at 10 cents, $199.40.

FINDING OF FACTS.

The charges aggregated by this item extend over a period of five years. They were disallowed by the comptroller "because these copies should be made by the marshal, and the charge therefor is * * * covered by his fee for service." It is in evidence that, because of this position taken by the comptroller, the clerk refused to continue furnishing the marshal subpoena tickets, as requested by the then district attorney, and the marshal refused to make them, and that the disagreement between the officers informally before the court; his honor, the late Judge McCoy, presiding. Upon consideration, the court

directed the clerk to continue to make the tickets according to the practice which had always prevailed in the court. This was in 1883. The clerk has continued to make the tickets from that time, and his making them has been acquiesced in by the district attorneys, and even now the district attorney concedes that if it is not the marshal's duty to make them, they are very properly made by the clerk.

### CONCLUSIONS OF LAW.

Unless the sheriff's fee for service at common law made it his duty to make the copies, and included that in the fee for service, it is clear that it is not included in the marshal's fee for service. The practice at common law was as follows: "In ordinary cases the common subpœna is sufficient process to compel the attendance of your witnesses. You may include the names of four witnesses in one writ. Take it, together with a *præcipe*, to the signer of the writs. Pay 1s. 8d. signing, 7d. sealing. Then make out a copy of the subpœna for each witness, and serve it upon him personally, at the same time showing him the writ." 1 Archb. Crim. Pr. 170; 2 Russ. Crimes, 945; Archb. Crim. Pl. 157. "The witness must be personally served by leaving with him a copy of the subpœna, or a ticket which contains the substance of the writ." Rosc. Crim. Ev. 106; 3 Chit. Gen. Pr. 830. For form of subpœna ticket, see 1 Sel. Pr. 451. In like manner it is provided by the United States statutes fixing marshal's fees that "when more than two writs of any kind required to be served in behalf of the same party on the same person might be served at the same time, the marshal shall be entitled to compensation for travel on only two of such writs; and to save unnecessary expense it shall be the duty of the clerk to insert the names of as many witnesses in a cause in such subpœna as convenience in serving the same will permit." Section 829, Rev. St. It was not necessary, except in particular jurisdiction, for process in non-bailable actions at common law to be served by a sheriff's officer. If by the attorney or his clerk it is sufficient. 1 Sel. Pr. 88. But in bailable actions the *capias* must be executed by the sheriff, under-sheriff, or by some bailiff or officer deputized by the warrant of the sheriff for that purpose. Id. 120, 122. Mr. Chitty states "the practical proceedings upon issuing process in general" as follows: In case of an ordinary summons, after the sealing of the principal writ, "the attorney then fills up at least as many blank writs of summons, printed on paper, as there are defendants, and which must be exact copies of the principal sealed writ, and one very exact copy of which must be delivered to each defendant, immediately after the service of the writ of summons, or arrest on a *capias*." In service of *capias* in bailable action, after the sealing of the principal writ, "the attorney, having made perfect copies, then proceeds to the proper office of the under-sheriff." 3 Chit. Gen. Pr. 226; 1 Archb. Crim. Pr. 329, 332. It is very clear, therefore, that at common law it was the duty of the plaintiff or his attorney to furnish the officer with the necessary copies of writs for service, and that, too, whether it be a writ which might be served by a private person, or whether it be one which could be served

only by an officer. It remains to be shown that the clerk has the right to charge for making the copies when made by him, at the request of the government, either express or implied. It cannot be doubted but that the party or his attorney has still the right to make these copies, and that, when so made, the clerk is entitled to no fee for such copies. But it is well known that these officers keep a supply of carefully prepared blanks in their offices for use, which they prepare at their own expense, and this appears to have been the case from a very early time. 1 Sel. Pr. 69, 115. And because of that fact, and their recognized skill in preparing such papers, it is almost the universal practice in civil cases for the parties or their attorneys to have the clerk make these copy writs or subpœna tickets. It relieves the attorney from the necessity of performing clerical details which would otherwise frequently take his attention away from the more important duties devolving upon him in the conduct of his case. The district attorney would have the same right to call upon the clerk to perform these services in a case that the attorney of a private party would have, and the clerk's fee-bill provides a fee of 10 cents per folio for making copies, (section 828, Rev. St.,) and such copies may be taxed in the costs of the case, (see section 983, Rev. St.)

It is not questioned that the clerk is entitled to charge for copies of injunctions, commitments, and other processes for service when made by him, but it is claimed that the following provision in the marshal's fee-bill changes the rule in regard to subpœnas: "For serving a writ of subpœna on a witness, fifty cents; and no further compensation shall be allowed for any copy, summons, or notice for a witness." Section 829, Rev. St. This limitation is not in the clerk's fee-bill, and applies only to the marshal. If it be contended that the statute reads by intendment, "and no further compensation shall be allowed to *either* the *clerk or* marshal for any copy, summons, or notice for a witness," the answer is that, under that construction, it could not by any means be held that that statute made it the duty of either the one officer or the other to make the copies, and since, as the law then stood, it was not the business of either, the duty would rest where it always did, upon the party or his attorney, and the contention that it was included in the marshal's fee for service could not stand. But this interpolation is not justified. The marshal is the executive officer of the court, and the affirmative right given by the clause is to charge for service of a writ of subpœna; and the limitation that "no further compensation shall be allowed for any copy, summons, or notice for a witness" means clearly that no additional charge shall be made for service of any notice, or the service of any summons, and *ejusdem generis*, for the service of any copy for a witness. It was intended to prevent the marshal from making any additional charge for serving the subpœna ticket, or for serving any notice or summons upon the witness when he is already under subpœna; it being provided in another clause that the marshal's *per diem* for attendance on court shall cover also the "bringing in and committing prisoners and witnesses during the term." But even if an interpolation be made so as to make the clause read, "and no further compensation shall be allowed for *making* any

copy summons or notice for a witness," the effect would be simply a reassertion of the right of the parties to make such copies for themselves without fee to any one, as the statute would not even then make it the duty of the marshal to make such copies. The language is purely negative in its character,—a prohibition as to a charge; and, as we have seen, the making of such copies did not otherwise fall within the prescribed duties of the marshal. The purpose of the limitation would be construed to be similar to that of rule No. 28 of the circuit court for this district, which is as follows: "The waiver of process and of service by the defendant shall not deprive the clerk or marshal of their respective costs for process and service, but no fees for copies and mileage shall be taxed." This rule, adopted by the late Justice WOODS, recognizes the right of the marshal to charge for a service not actually performed by him, if another person without his consent has put the machinery of his court in motion by an action which he is entitled to perform, and for which a fee is provided; but it is also an assertion that the making of copies of process by the clerk is not such a service, and that the parties have the right to make copies of process for themselves.

But whether it was the marshal's duty to make these copies or not, the validity of the copies did not depend upon who made them. The marshal refused to make them, and on motion, and by the acquiescence of the district attorney, they were made by the clerk. If it became the clerk's duty for any reason to perform that service for the government, he was entitled to the fee provided for such work. See *U. S.* v. *Macdaniel,* 7 Pet. 14, cited and applied in *Hartson* v. *U. S.,* 21 Ct. Cl. 455, 456.

*Item* 19. Charge for making final record in certain criminal cases, being for the number of folios recharged against the clerk by the comptroller on the report of an examiner of the department of justice as in excess of the actual count, $34.50.

### FINDING OF FACTS.

The difference in the count arises thus: . The examiner claims that the number of folios in any case is ascertained by taking the aggregate number of words in the entire record, and dividing by 100. The clerk claims that each separate and distinct order or other paper is counted separately, and the number of folios is ascertained by the rule prescribed by section 854, Rev. St., and the aggregate of the folios so found is the number of folios in the record.

### CONCLUSIONS OF LAW.

"The term 'folio,' in this chapter, shall mean one hundred words, counting each figure as a word. When there are over fifty and under one hundred words, they shall be counted as one folio; but a less number than fifty words shall not be counted, except when the whole statute, notice, or order contains less than fifty words." Section 854, Rev. St. Here is express authority in the statute for the counting of each separate and distinct order or other separate proceeding in the record separately. If an order contained less than 50 words, how could it be counted a folio, unless it be counted separately? If an order contained 425 words, how

can it be counted as only 4 folios, unless it be counted separately? And the counting of each separate and distinct order, notice, or statute separately implies that the other independent proceedings should be counted separately also. This would follow from the sequence of the proceedings on the record. And this has been expressly decided. *Cavender* v. *Cavender*, 10 Fed. Rep. 828. To illustrate: Suppose a record was made up of the following proceedings:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Indictment, | - | - | - | - | 1280 words, | - | - | 13 folios. |
| Order for *capias,* | | - | - | 25 " | | - | - | 1 " |
| *Capias,* | - | - | - | - | 483 " | - | - | 5 " |
| Order fixing bail, | | - | - | 30 " | | - | - | 1 " |
| Recognizance, | | - | - | - | 442 " | | - | 4 " |
| Plea, | - | - | - | - | 18 " | - | - | 1 " |
| Order for jury, | | - | - | - | 15 " | | - | 1 " |
| Jury panel, | - | - | - | 36 " | | - | - | 1 " |
| Verdict, | - | - | - | - | 10 " | - | - | 1 " |
| Sentence, | - | - | - | 110 " | | - | - | 1 " |
| | | | | | 2449 | | | 29 |

In such a case there would be 29 folios in the record, not 24. And this appears to be the general rule for measuring work done by printers, clerks, and stenographers. The reason of the rule is found in the fact that the chirographist can copy one uniform and continuous piece of manuscript with much greater facility, and in less time, than he can copy any number of separate and distinct papers aggregating the same number of words, but which he has to handle, select, arrange, and appropriately head, as he concludes one and passes to another.

*Item* 20. Charge for making final record in certain criminal cases, recharged against the clerk by the comptroller on the report of an examiner of the department of justice, $42.30.

### FINDING OF FACTS.

The recharge was because the records were not completed at the time of the rendition of the account. It is in proof that the records were completed very shortly afterwards, and evidence of that fact submitted to the comptroller, but no action was taken thereon by him.

### CONCLUSIONS OF LAW.

The final record is not ordinarily made up, or at least not completed until after judgment or decree. Archb. Crim. Pl. 127; 1 Bish. Crim. Proc. § 905. The cost of the final record is part of the costs of the case, and it therefore frequently becomes necessary, by reason of the fact that the court sentences a defendant to pay costs, that the costs of the case, including the cost of the record yet to be made, should be taxed as soon as judgment is rendered. The taxation of the costs of the record in such cases stand upon the same principle of necessity as the taxation and allowance of the fees of a witness for his mileage home before he has actually returned. For similar reasons it is usual to tax the cost of the final record in civil cases at the time of the rendition of the judgment, the

plaintiff paying costs, being entitled to have the amount paid included in his *fi. fa.* against the defendant. Under the laws of Georgia the costs of a case are payable to the officers on the rendition of the judgment. Code, §§ 3684, 3685. It frequently happens that the costs must be collected at that time, or the opportunity will be lost. Under the federal statutes it is provided that "the fees and compensations of the officers and persons hereinbefore mentioned, except those which are directed to be paid out of the treasury, shall be recovered in like manner as the fees of the officers of the states, respectively, for like services, are recovered." Section 857, Rev. St. Whether this section provides a different rule for costs collected from the government it is not necessary to consider. The proof is that the records were completed before the bringing of this suit, and therefore the clerk is certainly entitled to his judgment for the service, now. *Ravesies* v. *U. S.*, 21 Ct. Cl. 243.

## FINAL CONCLUSIONS.

The lengthy bill of particulars of the plaintiff which we have just reviewed has entailed upon the court an unusual amount of investigation into the details of the technical duties performed by the clerks and the commissioners of the United States courts, and not infrequently analogies have been drawn from the laws and decisions relating to the kindred duties of the marshal. While the labor has been very great, the court will be gratified if, by the conclusions reached, it has aided to make plain the procedure which should be followed by the clerks of our courts of record in the performance of the many and important duties which devolve upon them. These require, for their faithful and efficient performance, much technical knowledge and legal training. These officials are most inadequately compensated at best; and besides, the emolument provided by law, small as it is, is often frittered away by careless and irresponsible *dicta*, which nevertheless close effectually the avenues upon which they might lawfully proceed for the collection of the wages of their labor. It is wise and beneficial that the circuit and district courts have been given jurisdiction in such cases. It is true in every instance of disputed account in every item of the bill of particulars that the plaintiff is fully and incontrovertibly sustained by the undisputed evidence; always by the obvious construction of the statute, and generally by an ample array of precedents from the decisions of the courts or of the comptrollers, and frequently from both. It is impossible to doubt the merit of his demands, and the court finds that the facts hereinbefore set forth are true, and that the plaintiff have judgment against the United States of America for the sum of $780.30 and costs accrued since the time when the United States put in issue his right to recover.